**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 93-1479

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERICK EARL WRIGHT,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

(June 20, 1994)

Before JOHNSON, BARKSDALE, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Erick Earl Wright pled guilty to possession of a weapon. At sentencing, the district court made several factual findings and, based on those findings, made an upward departure from the sentencing guidelines by sentencing Wright to 60 months in prison. Because we find that one of the sentencing court's factual findings was clear error, we vacate Wright's sentence and remand the case for re-sentencing.

I.

In January 1993, Wright pled guilty to possession of a weapon in violation of 18 U.S.C. § 922(g)(1). Wright's pre-sentence

investigation report (PSIR) concluded that Wright should be assessed an offense level of 17 and a criminal history category of III, which would result in a sentencing range of 30 to 37 months. The PSIR also recommended that Wright's sentence should depart upward from the applicable sentencing guideline range.

At sentencing in May 1993, two officers who had arrested Wright on separate occasions testified. First, in March 1990, Wright was arrested near a high school for possession of a handgun. The arresting officer testified at sentencing that, on the day prior to Wright's arrest, two individuals reportedly exchanged gunfire near the same school. The officer obtained a description of a vehicle involved in the shooting. The officer returned the following day and found the vehicle, which was occupied by Wright and a friend, in front of the school. The officer searched the vehicle, found various weapons, and arrested Wright for unlawful possession of a handgun.

Second, in November 1991, Wright was arrested for attempting to elude a police officer by vehicle. At sentencing, the arresting officer testified that he attempted to stop a vehicle for a faulty inspection sticker and driving erratically. The officer stated that he pursued Wright, who was driving, for six blocks with his lights and siren engaged. The officer further testified that, while in pursuit, he noticed Wright and his passenger making furtive movements in the area of the glove box. Once Wright and his passenger had been arrested, the officer searched the vehicle and found that the glove box was locked. The key was found in the

2

back seat of the police cruiser where the passenger had been sequestered by himself after his arrest. The officer eventually found a handgun in the glove box and charged the passenger -- and not Wright -- for possession of the weapon.

The district court then adopted the PSIR's findings. The court also departed upward and imposed a 60-month sentence. In making its upward departure, the court stated that it "had spent a lot of time thinking about this" and "concluded that there is reliable information that indicates that the Criminal History Category in this case does not adequately reflect the seriousness of the defendant's past criminal conduct and, more importantly, does not adequately reflect the likelihood that the defendant will commit other crimes."

The court based its upward departure on three separate instances of prior similar conduct by Wright that were not considered in calculating his criminal history category. Specifically, the court first noted that, in July 1989, Wright was arrested for delivery of a controlled substance and possession of a weapon. The charge for possession of the weapon was dropped after Wright was sentenced in state court for delivery of the controlled substance. The court then pointed to the March 1990 incident where Wright was arrested for possession of a weapon near a local high school. Finally, the court relied on the November 1991 incident where, even though Wright was charged only with attempting to evade arrest, the court found that Wright constructively possessed the weapon found in the glove box. The

3

court also noted that the November 1991 incident occurred when Wright was a convicted felon.

The court then summarized: "Taking the overall picture into account, the court has concluded that an upward departure should be made and has concluded the upward departure should be for a total of . . . 60 months." Given Wright's offense level was 17, the court's upward departure of 23 months meant his criminal history category jumped from Category III to Category VI. Wright's counsel objected to the court's upward departure, whereupon the court informed Wright that he could appeal his sentence. Wright now appeals his sentence.

## II.

Wright first argues the sentencing court's factual finding that he constructively possessed the handgun in the November 1991 incident was clearly erroneous and, therefore, we should remand this case for re-sentencing. At sentencing, the government's burden of proof is not as heavy; it must prove its case by only a preponderance of the evidence. United States v. Buckhalter, 986 F.2d 875, 879 (5th Cir. 1993). On appeal, we then review those factual findings for clear error. Id. Thus, the issue here is whether the sentencing court clearly erred when it concluded that the government had demonstrated by a preponderance of the evidence that Wright constructively possessed the handgun in the November 1991 incident.

The elements of § 922(g)(1) are that (1) the defendant had a previous felony conviction, (2) that the defendant possessed a

4

firearm, and (3) the firearm had travelled in or affected interstate commerce. United States v. Garrett, 903 F.2d 1105, 1110 (7th Cir. 1990). We have established that the second element, i.e., possession of a firearm, may be actual or constructive, the latter being defined as ownership, dominion, or control over the contraband itself or dominion or control over the premises or vehicle in which the contraband is concealed. United States v. Smith, 930 F.2d 1081, 1085 (5th Cir. 1991); United States v. Ferg, 504 F.2d 914, 916-17 (5th Cir. 1974). The determination of whether constructive possession exists is not a scientific inquiry. Instead, we employ a common sense, fact-specific approach. United States v. Mergerson, 4 F.3d 337, 349 (5th Cir. 1993).

The facts of this case compel us to conclude that the district court clearly erred in concluding that Wright constructively possessed the gun. The only evidence the government proffered to support its theory was that Wright operated the vehicle, eluded the police,[1] and made furtive movements near the glove box. The government failed to adduce any additional evidence linking Wright to the gun, such as fingerprints or continual, long-term use of the vehicle. More importantly, the facts establish, if anything, that the passenger -- and not Wright -- exercised complete dominion and control over the gun: (1) the key which unlocked the glove box was found in the cruiser where the passenger had been detained, (2) the

---

[1]Wright maintains that the rear view mirror of the passenger's vehicle was missing, thereby precluding him from observing whether he was being pursued. The arresting officer corroborated Wright's claim that the mirror was missing.

passenger alone was charged with possession of the gun,[2] and (3) the passenger owned the car.

We recognize that in other cases we have indicated that mere dominion over a vehicle in which a firearm is found can lead to an inference of constructive possession.  See e.g., United States v. Prudhome, 13 F.3d 147, 149 (5th Cir. 1994); United States v. Knezek, 964 F.2d 394, 400 (5th Cir. 1992).  But in those cases, we were not confronted with such overwhelming countervailing evidence.  In Prudhome, for example, the government demonstrated not only that the defendant was driving the vehicle but also that the gun was found directly beneath him and that three rounds of matching ammunition were found in his waist pocket.  Prudhome, 13 F.3d at 149.  Likewise, in Knezek, the government demonstrated the defendant not only was driving the vehicle but also admitted ownership of the weapons.  Thus, while dominion over the vehicle certainly will help the government's case, it alone cannot establish constructive possession of a weapon found in the vehicle, particularly in the face of evidence that strongly suggests that somebody else exercised dominion and control over the weapon.

We stress that our holding is conditioned upon this countervailing evidence because a sentencing court's factual findings typically are entitled to great deference.  United States

_____

[2]We note with some interest that, while the arresting officer believed he did not have probable cause to charge Wright with possession, the sentencing court nonetheless found that Wright, more likely than not, possessed the weapon.  We further note that the officer's acts and omissions were contemporaneous with the arrest, whereas the sentencing court's inferences were drawn nearly two years later.

v. Perez, 897 F.2d 751, 752-53 (5th Cir. 1990).  The sentencing court probably would not have erred in finding that Wright constructively possessed the weapon if such countervailing evidence did not exist.  See e.g., United States v. Flenoid, 718 F.2d 867 (8th Cir. 1983) (weapon found beneath defendant's/driver's seat after officer noticed defendant bend over); see also, United States v. Garrett, 903 F.2d 1105 (7th Cir. 1990) (loaded weapon found on the floor beneath the steering wheel); United States v. Whitfield, 629 F.2d 136 (D.C. Cir. 1980) (two loaded weapons found within three inches of defendant, who owned vehicle).  But see United States v. Blue, 957 F.2d 106 (4th Cir. 1992) (weapon found beneath defendant's/passenger's seat after officer noticed defendant bend over).

The extent of this countervailing evidence in this case is too large to ignore.  Nearly fifty years ago, the Supreme Court defined the clearly erroneous standard to mean: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948) (emphasis added).  Given all the evidence here, we find such a mistake has been made.  The district court clearly erred in concluding that the government demonstrated that Wright, more likely than not, constructively possessed the weapon during the November 1991 incident.

7

In stating its reasons for departing upward, the sentencing court noted that, at the time of the November 1991 incident, Wright was a convicted felon.  The court's comment indicates to us that it relied more on this incident than either the July 1989 or March 1990 incidents in deciding to depart upward.  We have concluded, however, that the court's finding that Wright constructively possessed the gun in the November 1991 incident was erroneous.  Subtracting that incident from the quantum of facts the court used in deciding to depart upward, we cannot conclude whether the sentencing court still would have decided to depart upward and, if so, by how much.  In other words, we cannot conclude that the court's error was harmless.  We therefore must vacate Wright's sentence at this point and remand the case for re-sentencing. United States v. Wilder, 15 F.3d 1292, 1298 (5th Cir. 1994).

## II.

Wright alternatively claimed that the sentencing court failed to adequately explain its reasons for departing upward.  Because Wright's requested relief (i.e., that we vacate his sentence and remand the case for re-sentencing) has been granted, this issue is moot.  We would note, however, that Wright's claim is a valid one given our recent opinion in United States v. Lambert, 984 F.2d 658 (5th Cir. 1993) (en banc).  Specifically, the court increased Wright's criminal history category from Category III to Category VI, which translates into a 23-month upward departure.  In so doing, the court, contrary to Lambert, failed to explain why it rejected any intermediate categories.  At re-sentencing, the court

8

must comply with the directions we issued in <u>Lambert</u> and, more recently, in <u>United States v. Ashburn</u>, ___ F.3d ___ (5th Cir. 1994).

## III.

We find that the sentencing court clearly erred in concluding that Wright constructively possessed the weapon during the November 1991 incident.  Because this erroneous finding was a major reason in the court's decision to depart upward, we VACATE Wright's sentence and REMAND the case for re-sentencing.