**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 95-60218
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

BARTO EDWARD USRY, JR.,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Mississippi
(3:94cr123WN)

(October 23, 1995)

Before THORNBERRY, JOLLY and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Appellant Barto Usry appeals his conviction for possession of a firearm by a felon. We affirm.

BACKGROUND

Officer Rozerrio Camel of the City of Jackson, Mississippi,

---

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

Police Department testified that, on the afternoon of September 15, 1994, while patrolling his usual beat, he spotted a blue and white pickup truck with no license plate. When the pickup stopped at a red light with Camel's car behind it, Camel observed that the driver "began to look around like he was nervous . . . just unusual movement. He was jumping around. And he leaned forward." After Camel stopped the truck, the driver identified himself as Barto Usry, but said he had no driver's license or other identification. Camel placed Usry under arrest, conducted a pat-down for weapons, and seated him in his patrol car. A check of the truck's identification number indicated the vehicle was not stolen, but belonged to someone other than Usry. Camel then began an inventory of the truck's contents and found a loaded Colt .357 Magnum handgun under the driver's seat. When Camel confronted Usry with the gun, Usry "stated . . . that he was a convicted felon and he would be a fool if he was caught with a gun." At some point Usry was released on bond.

On October 19, 1994, Usry voluntarily went to the office of Special Agent Ted G. Stratakos of the Bureau of Alcohol, Tobacco and Firearms, who was investigating a different incident. Stratakos testified that, during this meeting, Usry admitted commission of the instant offense. According to Stratakos, Usry told him that on the day he was stopped by Camel, "he was on his way to deliver one eighth of an ounce of crystal methamphetamine . . .." He also told Stratakos

> that while he was driving the truck, he had a revolver, a 357 revolver tucked in the waistband of his pants. He

2

said that while he was being stopped, he reached into his pants and he even gestures -- showed me how he reached into his pants and put this revolver under the driver's seat. . . . And he told me that he told the officer the gun was in the car because he felt it was inevitable that the officer would find it.

After Usry was convicted by a jury of the instant offense the court assessed a 295 month sentence, five years supervised release, a $5,000 fine, and a $50.00 special assessment. He raises several challenges to his conviction and sentence, including sufficiency of the evidence to support the conviction.

## SUFFICIENCY OF EVIDENCE

Usry argues the evidence was insufficient to support his conviction because the Government failed to establish a connection between himself and the .357 revolver, and therefore, his motion for judgment of acquittal should have been granted. We disagree.

In a analyzing an insufficiency claim this Court, viewing the evidence in the light most favorable to the verdict, affords the Government the benefit of all reasonable inferences and credibility choices. United States v. Nixon, 816 F.2d 1022, 1029 (5th Cir. 1987), *cert. denied*, 484 U.S. 1026 (1988). It is not necessary for the evidence to exclude every reasonable hypothesis of innocence, or be inconsistent with every conclusion except that of guilt, so long as a reasonable trier of fact could find the evidence establishes guilt beyond a reasonable doubt, and the jury may choose among reasonable constructions of the evidence. United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) (*en banc*), aff'd, 462 U.S. 356 (1983).

3

To support a conviction for unlawful possession of a firearm by a convicted felon, the Government must prove the defendant had a prior felony conviction, knowingly possessed a firearm, and the firearm traveled in or affected interstate commerce. 18 U.S.C. § 922(g); United States v. Wright, 24 F.3d 732, 734 (5th Cir. 1994). Possession may be actual or constructive, *Id*. at 734. Constructive possession is defined as ownership, dominion or control over the premises or vehicle in which the contraband is concealed, and a fact-specific approach is applied to determine whether the firearm was constructively possessed. *Id*. at 734-35. Usry challenges the government's proof of the second element, *viz*: that he knew there was a handgun in the car he was driving.

In addition to the facts recited above, the jury heard the following additional evidence. Officer Camel testified that the .357 revolver was pushed up under the seat of the truck in a place close enough to the driver's seat so that Usry would have had easy access to the gun or could have placed it there. Special Agent Stratakos testified that Usry told Camel "the gun was in the car because he felt it was inevitable that the officer would find it." Stratakos further stated that Usry informed him that two women named Brenda and Pam had given him the revolver for an eighth of an ounce of methamphetamine, and told him that the gun was stolen from a highway patrolman.

Usry argues that because his fingerprints were not on the revolver and because he was not the owner of the truck, the evidence was insufficient to show knowing possession, relying on

4

<u>United States v. Blue</u>, 957 F.2d 106 (4th Cir. 1992). In <u>Blue</u>, the court found the evidence insufficient because there were no fingerprints or any other physical evidence to show the defendant knowingly possessed the firearm. *Id*. at 108. However, <u>Blue</u> is distinguishable from the instant case because here, Stratakos' testimony that Usry admitted possessing the revolver showed that he knowingly possessed the firearm. The jury was free to believe Stratakos' testimony. <u>Bell</u>, 678 F.2d at 549. Viewed in the light most favorable to the verdict, the evidence was sufficient to support the conviction.

EXTRINSIC OFFENSES

Prior to trial Usry filed a motion in limine attempting to exclude Stratakos' testimony regarding Usry's involvement in narcotics transactions before and after his arrest as prejudicial and irrelevant under FED. R. EVID. 403. He specifically complained of the following acts of misconduct related by Stratakos: that Usry was on his way to deliver drugs when stopped; that he had acquired the allegedly stolen revolver from two women; and that he had ingested methamphetamine while in the back of Camel's car and remained "wired" for three days afterward. The district court denied the motion, but counsel renewed the objection to this line of testimony when Stratakos began testifying that Usry was on his way to deliver methamphetamine when Camel stopped him. The court referenced its prior ruling but did not state reasons for the denial. Usry now reurges his Rule 403 complaint, but also argues

5

for the first time on appeal that the evidence was precluded under FED. R. EVID. 404(b). Because he did not argue application of Rule 404(b) before the district court, these contentions will be reviewed under a plain error standard of review.

A reviewing court will reverse a district court's ruling on admissibility of evidence only if it was an abuse of discretion. United States v. Eakes, 783 F.2d 499, 506-07 (5th Cir.), *cert. denied*, 477 U.S. 906 (1986). In order to preserve a challenge to the admission of evidence after the denial of a motion in limine, an objection must be made or renewed at trial contemporaneously with presentation of the challenged evidence. United States v. Graves, 5 F.3d 1546, 1551-52 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 1829 (1994).[1]

This court will correct plain forfeited errors only when the appellant shows that there is an error, that is clear or obvious, which affects his substantial rights. United States v. Calverly, 37 F.3d 160, 162-64 (5th Cir. 1994) (*en banc*) (citing United States v. Olano, ___ U.S. ___, 113 S.Ct. 1770, 1776-79 (1993)), *cert. denied*, 115 S.Ct. 1266 (1995). Parties are required to challenge

---

[1] Although counsel renewed his objection to Stratakos' testimony that Usry was delivering methamphetamine when stopped, he did not ask for a running objection, or continue to object either when Stratakos testified regarding the acquisition of the gun, or when he related the tale of how Usry had ingested the drug while in Camel's car, and which caused him to be "wired for two or three days" after his arrest and incarceration. Since these incidents were arguably separate and distinct extrinsic offenses, and because counsel did not object as the evidence unfolded at trial, his Rule 403 complaint regarding this evidence will also be reviewed under the plain error standard. Graves, 5 F.3d at 1552.

errors in the district court, and when a criminal defendant fails to object, thereby forfeiting the error, this Court may remedy the error only in the most exceptional case. <u>Calverly</u>, 37 F.3d at 162.

Usry argues that, under Fed. R. Evid. 404(b), Stratakos' testimony concerning his involvement with narcotics was extrinsic to the offense of possession of a firearm. Alternatively, he argues that, if the evidence was not extrinsic, its admission was unfairly prejudicial because it allowed the Government to portray him as an armed narcotics dealer. Rule 404(b) precludes admission of

> [e]vidence of other crimes, wrong or acts . . . to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . ..

An inherent danger in admission of "other acts" evidence is that a jury might convict the defendant not of the charged offense, but of the extrinsic offense. <u>United States v. Ridlehuber</u>, 11 F.3d 516, 521 (5th Cir. 1993); <u>United States v. Beechum</u>, 582 F.2d 898, 914 (5th Cir. 1978), *cert. denied*, 440 U.S. 920 (1979). Even if relevant, the probative value of extrinsic act evidence must be weighed against its prejudicial impact. *Ibid*.

In order to be admissible under Rule 404(b), uncharged misconduct evidence must be relevant to an issue other than the defendant's character, must possess probative value which is not outweighed by undue prejudice, and must satisfy the other requirements of Rule 403. <u>United States v. Bentley-Smith</u>, 2 F.3d 1368, 1377 (5th Cir. 1993). With the above principles in mind, we

7

turn to analysis of the complained of acts in the instant case.

Stratakos' testimony that Usry was *en route* to deliver drugs when stopped and his acquisition of the handgun through a trade was arguably relevant to show knowledge, an element which the Government must prove in a prosecution for possession of a firearm by a felon. *See* Wright, 24 F.3d at 734. As such, the testimony was not relevant solely as character evidence. *See* Ridlehuber, 11 F.3d at 521. Rule 404(b) therefore, did not preclude admission of the testimony. However, our analysis does not stop here.

Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . .." (emphasis added). This Court is reluctant to exclude evidence under Rule 403 because all relevant evidence is by its nature inherently prejudicial to the defendant. Only *unfair* prejudice which *substantially* outweighs probative value permits exclusion of relevant evidence under Rule 403. United States v. Pace, 10 F.3d 1106, 1115-16 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 2180 (1994).

The testimony that Usry obtained the gun through a trade, and that he was on his way to deliver drugs was probative of Usry's knowing possession of a firearm, and therefore relevant because it tended to "make the existence of any fact that is of consequence to the determination of the action more probable . . . than it would without the evidence." FED. R. EVID. 401. The evidence was also prejudicial because distribution of methamphetamine "is the kind of

offense for which the jury may feel the defendant should be punished regardless of whether he is guilty of the charged offense."  Ridlehuber, 11 F.3d at 523.  Nevertheless, even though no limiting instruction was given, the prejudicial nature of this evidence was mitigated in part by the weight of the unchallenged evidence supporting Usry's conviction.  This evidence included Usry's statement to Stratakos that he had the revolver on his person when Camel stopped him, as well as Camel's testimony that the gun was well within Usry's reach inside the truck.  Under these circumstances the prejudicial nature of the evidence did not substantially outweigh its probative value.  Thus, there was no error, plain or otherwise in its admission.

Stratakos' testimony regarding Usry's possession and ingestion of methamphetamine after his arrest, however, is a different matter.  Stratakos was permitted to testify as follows:

> He said that while he was in the back of the patrol car that he had a small packet with approximately one gram of crystal methamphetamine in it and that he tossed it on the patrol car floor; that he still had the one eighth ounce of crystal methamphetamine on his person.  He told me that when they transported him to the city jail and he was being booked, he had the opportunity to take that bag and put it in his mouth.  And he began trying to swallow the drug.  He told me that he swallowed a major portion of the drug and even joked about the fact that he stayed wired for two or three days afterward because the drug was in his system.

This testimony had absolutely no relevance to any issue in the case, as the Government had no need of this incident to prove any element of the offense, nor was it "inextricably intertwined" with the crime.  Indeed, this evidence was, by its very nature, the type of character evidence that Rule 404(b) was meant to exclude.

9

Evidence of drug trafficking, as stated previously is extremely inflammatory and prejudicial, as it may cause the jury to convict based solely on the extrinsic evidence. Ridlehuber, 11 F.3d at 523. The district court should not have allowed this testimony. However, a review of the record indicates its admission did not affect Usry's substantial rights and thus, no plain error resulted. *See* Calverly, 37 F.3d at 164.

DENIAL OF CAUTIONARY INSTRUCTION

At the close of the evidence, the trial judge refused Usry's requested instruction which stated as follows:

> There is proper concern about the stipulation to the fact that the defendant has a felony conviction. Many persons are convicted felons. Simply because the defendant has a felony conviction does not mean that he committed the crime charged.

Usry argues this instruction was necessary to overcome the inherent bias of his status as a convicted felon.

The district court has wide latitude in formulating the jury charge, and refusal to give a requested instruction is reviewed for an abuse of discretion. United States v. Aggarwal, 17 F.3d 737, 745 (5th Cir. 1994). This Court will reverse only if the requested instruction was substantially correct, was not substantially covered in the charge actually delivered to the jury, and concerns an important point such that failure to give it seriously impaired the defendant's ability to effectively present his defense. *Ibid*.

The court instructed the jury that the stipulation between the parties "is not and was not admitted as proof concerning the

10

question of whether or not the defendant knowingly possessed a firearm which affected interstate commerce." Further, "The fact that the defendant has a felony conviction cannot in and of itself infer that the defendant knowingly possessed a firearm which affected interstate commerce." Jurors were also instructed that they were required to find "evidence independent of the stipulation" to prove the crime charged. Since Usry's requested instruction was comprehensively covered in the charge given the jury, the refusal to deliver the proposed instruction did not seriously impair his ability to present a defense. *See* Aggarwal, 17 F.3d at 745. Consequently, the district court did not abuse its discretion in denying the requested instruction.

SENTENCING

Usry argues the district court erred in denying him a reduction for acceptance of responsibility and in applying the armed career criminal provision in calculating his sentence. The district court's application and interpretation of the Sentencing Guidelines are reviewed *de novo*, while its findings of fact are reviewed for clear error. United States v. Hill, 42 F.3d 914, 916 (5th Cir. 1995), *cert. petition filed*, June 5, 1995. A sentence will be vacated only if it was imposed in violation of law, if the guidelines were improperly applied, or if the sentence is outside the guidelines and is unreasonable. United States v. Parks, 924 F.2d 68, 71 (5th Cir. 1991).

Usry argues that the district court should have granted him a

11

reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) because he admitted to Agent Stratakos that he possessed the firearm. § 3E1.1(a) authorizes the district court to decrease the offense level by two levels if "the defendant clearly demonstrates acceptance of responsibility for his offense[.]" The commentary accompanying § 3E1.1 states that conviction after a trial as opposed to a guilty plea does not automatically preclude consideration for the reduction, but in certain circumstances a defendant may qualify for the adjustment based on pre-trial statements and conduct. § 3E1.1, note 2. If a defendant "falsely denies or frivolously contests, relevant conduct that the court determines to be true [he] has acted in a manner inconsistent with acceptance of responsibility." § 3E1.1, note 1(a).

Consistent with note 5 of § 3E1.1, we have agreed that because the sentencing judge is in a unique position to evaluate the defendant's acceptance of responsibility, the court's determination must be afforded great deference on review. United States v. Franks, 46 F.3d 402, 405 (5th Cir. 1995). This Court has applied various standards of review of a district court's refusal to credit acceptance of responsibility: "clearly erroneous," "without foundation," and "great deference." Id. at 406. There appears to be no practical difference between these standards. Ibid. However, we have held the standard is even more deferential than a pure clearly erroneous standard. United States v. Maldonado, 42 F.3d 906, 913 (5th Cir. 1995).

Although Usry orally confessed to Stratakos, he also

challenged the fact that he made the statement and the content of the statement during trial and sentencing. The adjustment for acceptance of responsibility does not "apply to a defendant who puts the government to its burden of proof at trial by denying essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." § 3E1.1. A defendant's attempt to minimize or deny involvement in an offense supports a court's refusal to grant a reduction for acceptance of responsibility. United States v. Watson, 988 F.2d 544, 551 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 698 (1994). Usry has not met his burden of showing the district court abused its discretion in denying the reduction.

Finally, Usry complains the district court erred in enhancing his sentence because he was an armed career criminal under U.S.S.G. § 4B1.4(b)(3)(A). The Presentence Report ("PSR") included a finding that the enhancement applied and the district court agreed.[2] A defendant may be subject to the enhancement under 18 U.S.C. § 924(e) if he was convicted of being a felon in possession of a firearm, 18 U.S.C. § 922(g), and he had at least three prior violent felony convictions. § 4B1.4, comment (n.1). The PSR stated that Usry qualified as a violent felony offender because he had three prior convictions for armed robbery and was delivering methamphetamine when arrested for possessing the .357 revolver.

---

[2] Usry challenges this finding by the district court for the first time on appeal. Therefore, his complaint is reviewed only for plain error. *See* United States v. Brunson, 915 F.2d 942, 944 (5th Cir. 1990), *overruled on other grounds*, Calverly, 37 F.3d at 163-64, n.27.

13

Added to the other adjustments, this enhancement resulted in a total offense level of 34 and a criminal history category of six, with a sentencing range of 262 to 327 months.

Usry's complaint regarding the enhancement is twofold. First, he argues that because the district court found he was only in possession of the methamphetamine during commission of the offense the enhancement did not apply. Second, he asserts the court should not have applied the enhancement because being a felon in possession of a firearm is not a crime of violence, relying on Stinson v. United States, 113 S.Ct. 1913 (1993). This latter contention is unavailing because Usry's enhancement was due to his involvement with narcotics and not because his was a crime of violence.[3]

The court at sentencing found that Usry had a base level offense of 24 because he was convicted of violating § 922(g) and had at least two prior felony convictions for crimes of violence. U.S.S.G. § 2K2.1(a)(2). The base offense level was raised to level 28 because Usry possessed a firearm in connection with another felony offense, namely possession of a controlled substance. U.S.S.G. § 2K2.1(b)(5). The court further found that because Usry had three violent felony convictions, pursuant to § 924(e)(1) and § 4B1.4(b)(3)(A) he was deemed to be an armed career criminal, further raising the offense level by four additional levels.

_____

[3]  Usry was not sentenced under § 4B1.1 (Nov. 1989), the career-offender guideline provision interpreted in Stinson. The commentary to the 1994 version of § 4B1.2 contains a definition of "crime of violence" which specifically excludes unlawful possession of a firearm by a felon.  § 4B1.2 (comment, note 2).

§ 4B1.4(b)(3)(A) provides in part that the offense level is 34 "if the defendant used or possessed the firearm . . . in connection with a crime of violence or a controlled substance offense, as defined in §4B1.2(1), . . .." Usry contends that his offense does not fit the definition of this section, which defines "controlled substance offense" as "an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the *possession of a controlled substance* . . . with *intent to* manufacture, import, export, *distribute*, or dispense." § 4B1.2(1) (emphasis added). Since the PSR found him to be in possession of methamphetamine with intent to distribute the drug, and the district court followed the PSR in sentencing him, the offense adequately fit the definition provided in § 4b1.2(1). Thus, there was no plain error in the district court's application of the guidelines.

CONCLUSION

We find no merit to any of Usry's contentions. Therefore, the judgment and sentence are

AFFIRMED.

15