**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-40715
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

PAUL ANTHONY LYONS,

Defendant-Appellant.

Appeal from the United States District Court
For the Eastern District of Texas
USDC No. 1:99-CR-170

March 30, 2001

Before EMILIO M. GARZA, STEWART and PARKER, Circuit Judges.

PER CURIAM:[*]

Paul Anthony Lyons was convicted following a bench trial for being a felon in possession of a firearm. Lyons was sentenced to a 96-month term of imprisonment and a three-year period of supervised release. Lewis appeals his conviction and we affirm.

**FACTS AND PROCEDURAL HISTORY**

At the trial, Paul Arvizo, a narcotics detective with the Port Arthur Police Department, testified that he had received

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

information that marijuana was being sold out of a residence at 6255 Jade Avenue, in Port Arthur, Texas, by a person named Jerry and that a black male named Paul Lyons had been bringing marijuana to the residence. Arvizo understood that Lyons had three or four different vehicles, including a blue Chevy Suburban and a small grey or blue pickup truck, and that Lyons did not use the same vehicle each time he made a delivery. Arviso had been told that the pickup truck was low to the ground, a "low rider." Arvizo had also learned where Lyons lived.[1] The information was provided to Arvizo by three confidential informants. Arvizo had used one of these informants in the past and that informant had given him accurate information.

On May 20, 1999, Arvizo, Port Arthur Police Department Sergeant Pat Powell and Port Arthur Police Department Detective Shawn Peron went to the Jade Street residence in an unmarked white truck and asked permission to conduct a search. Arvizo and Peron were wearing tactical gear, with visible police badges, a web belt with a gun and gun holster. Powell was in plain clothes. A resident, Mary Kay Bennett, answered the door and gave the officers permission to come in. A sandwich baggie of marijuana was in plain view on a shelf in the living room. Other evidence of marijuana was found in the house.

---

[1] Arviso had also been advised that Lyons had gone to Houston to get the marijuana; that Lyons also owned a Chevy Blazer; that Lyons also delivered marijuana to another residence; and that Lyons had fled from an interdiction unit in a high-speed chase in Beaumont and had burned the vehicle involved in the incident. Arviso had verified this information.

2

While the officers were searching the house, a grey Izuzu pickup truck pulled up to the house. Officer Powell began speaking with Lyons, who was driving the truck. After Lyons entered the house and stated that he needed to use the bathroom, Arvizo asked for his name and address, which Lyons provided.

Powell confirmed that he had seen Lyons drive up in the grey pickup truck. Lyons could produce neither his drivers license nor proof of insurance, both of which are required by law in order to operate a motor vehicle. Arvizo decided to run a check for outstanding warrants and to determine whether Lyons had a valid driver's license. Arvizo had decided that Lyons could not leave driving the truck until it was determined that Lyons had a valid driver's license.

After Arvizo advised Powell that Lyons was one of his suspects, Powell asked for permission to search the truck, which Lyons refused to give. Arvizo told Lyons that he was not free to leave because Arvizo had not finished his criminal investigation and had not yet run a check for outstanding warrants and for a valid driver's license. Lyons had not been told that he was under arrest at that time.

Before Arvizo could use the radio to initiate the warrant and driver's license check, Lyons stated that he thought he might have a driver's license in the truck. Arvizo and Lyons walked over to the truck. Lyons opened the driver's door, pulled out a daily planner, and handed Arvizo a driver's license. When he did

this, Lyons leaned over and locked the passenger door.  Peron was standing on that side of the vehicle.

The identification confirmed that Lyons was Arvizo's suspect.  Arvizo informed Powell of that fact and, speaking over the bed of the truck, told Peron that Lyons was the person who was suspected of transporting marijuana to the house.  At that point, Lyons was sitting in the driver's seat with his legs out of the truck.  Lyons pulled his legs into the vehicle, closed the door, began to roll up the window, and put his key in the ignition.  Arvizo leaned into the vehicle and put his hand on Lyons's right hand in order to prevent him from turning the ignition switch.  Lyons briefly resisted and attempted to start the vehicle.  Finally, he gave up and exited the truck.

Lyons was placed under arrest for evading detention.  Arvizo reached under the driver's seat and found a plastic bag containing five one-ounce packages of marijuana.  The vehicle was transported to the mid-county police office.  Lyons was taken to the mid-county jail and booked with possession of marijuana.  An inventory search of the vehicle was conducted, and an unloaded gun was found under the driver's seat in the area where the marijuana had been found.  The gun was a Rossi model 33 .38 Special Revolver.

The defense presented testimony showing that the gun belonged to Lyons's wife and that she had placed the gun under the driver's seat of the Izuzu after retrieving it unloaded from

4

the Police Department evidence room.[2]  Ms. Lyons stated that she had forgotten about the gun and that she had not told Lyons that the gun was in the truck.  Ms. Lyons stated that she was unaware that it was illegal for Lyons to possess a gun.  Ms. Lyons admitted on cross examination that Lyons had prompted her to go and retrieve the gun.  She stated that she first informed Lyons that the gun was in the truck after the truck was seized, which prompted Lyons to call Detective Arvizo to inquire about the gun.

Prior to the trial, Lyons had moved to suppress evidence of the gun.  After hearing the evidence, the district court denied the motion to suppress, assigning reasons.  The district court found that, although the question was close, circumstantial evidence established beyond a reasonable doubt that Lyons knew the gun was in the truck.

## DISCUSSION

### A. Motion to suppress

Lyons contends that the seizure, detention, and warrantless search of Lyons and the pickup truck were unreasonable and that the district court erred in denying the motion to suppress.

> Police officers may briefly detain individuals . . . if they have a reasonable suspicion that criminal activity is afoot.  The Fourth Amendment requires only some minimum level of objective justification for the

---

[2] The gun was evidence in an assault case in which Paul Lyons was the suspect.  Ms. Lyons testified that the gun had been taken from her home by police when the police responded to an incident in which she had complained that Lyons had followed her out of the house and fired a gun in the air as she was leaving to go to her mother's house following an argument with Lyons.  It turned out that the gun had not been discharged.  Ms. Lyons denied that there had been a second gun in the house.

5

officers' actions--but more than a hunch--measured in light of the totality of the circumstances.  Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion.

United States v. Michelletti, 13 F.3d 838, 840 (5th Cir. 1994) (en banc) (internal citations omitted); see Terry v. Ohio, 392 U.S. 1, 30 (1968).  "To determine if a seizure has exceeded the scope of a permissible Terry stop, [this court] must undertake a two-step inquiry: (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that justified the interference in the first place."  United States v. Jones, 234 F.3d 234, 240 (5th Cir. 2000).

The district court's determination of the objective reasonableness of a Terry stop is a conclusion of law which this court reviews de novo.  Michelletti, 13 F.3d at 841.  The evidence is viewed in the light most favorable to the government as the prevailing party.  Id.

Lyons was not detained until after the officers had developed a reasonable suspicion that Lyons was the person whom the confidential informant had identified by name as the supplier of marijuana to the house.  See United States v. Cooper, 43 F.3d 140, 146 (5th Cir. 1995) (no detention where officers had merely boarded a bus and had asked passengers for identification).  In addition to the fact that Lyons had identified himself using the name supplied by the confidential informant, the tip was corroborated by the description of Lyons's truck, the fact that

6

marijuana was found in the house packaged for sale, the fact that Lyons had driven up to the house, and by Lyons's suspicious behavior in attempting to leave before Arvizo had concluded his inquiry.  See United States v. Rodriguez, 835 F.2d 1090, 1092 (5th Cir. 1988) ("When law enforcement officials corroborate the details of an anonymous informant's tip, the tip can give rise to a reasonable articulable suspicion."); cf. United States v. Roch, 5 F.3d 894, 898-99 (5th Cir. 1993) (confidential informant's tip which was insufficiently detailed did not give rise to reasonable suspicion; discussing cases).

Here, the Terry stop was justified at its inception, and the officers' actions were reasonably related in scope to the circumstances which justified the interference.  See Jones, 234 F.3d at 240.  We therefore affirm the district court's ruling.

**B. Sufficiency of the Evidence**

Lyons contends that the evidence presented by the Government was insufficient to prove beyond a reasonable doubt that he had knowingly possessed the gun.  The standard of review in assessing a challenge to the sufficiency of the evidence in a criminal case is whether a "reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt."[3]  United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), aff'd on other grounds, 462 U.S. 356 (1983); see Jackson v. Virginia, 443 U.S. 307, 319 (1979).  In evaluating the

---

[3] This standard applies because Lyons timely moved for judgment of acquittal.  United States v. Landry, 903 F.2d 334, 338 (5th Cir. 1990).

7

sufficiency of the evidence, we view all evidence and all reasonable inferences drawn from it in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80 (1942).

To obtain a conviction for possession of a firearm by a felon under § 922(g)(1), the Government must prove beyond a reasonable doubt that the defendant had been "convicted of a felony and that he knowingly possessed a firearm . . . in or affecting interstate commerce." United States v. Jones, 133 F.3d 358, 362 (5th Cir. 1998). The question presented in this case is whether Lyons had knowing possession of the firearm.

Possession of a firearm may be actual or constructive. United States v. Speer, 30 F.3d 605, 612 (5th Cir. 1994). "Constructive possession is the exercise of, or the power or right to exercise dominion and control over the item at issue[.]" Id. (internal quotation and citations omitted). Constructive possession may be proven with circumstantial evidence. United States v. McKnight, 953 F.2d 898, 901 (5th Cir. 1992). The court applies "a common sense, fact-specific approach" to a determination whether constructive possession exists. United States v. Wright, 24 F.3d 732, 735 (5th Cir. 1994).

Constructive possession may be inferred from the fact that the defendant exercised dominion or control over a vehicle in which the weapon was found. United States v. Knezek, 964 F.2d 394, 400 (5th Cir. 1992); see Jones, 133 F.3d at 362. Mere dominion over a vehicle, however, is insufficient to establish

8

constructive possession where the evidence suggests that someone else exercised dominion or control over the contraband. See United States v. Crain, 33 F.3d 480, 487 (5th Cir. 1994); see also Wright, 24 F.3d at 735; cf. United States v. Prudhome, 13 F.3d 147, 149 (5th Cir. 1994) (constructive possession by driver found where gun was under driver's seat and matching ammunition was found on driver). Also, where the contraband is hidden, "additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge is required." United States v. Jones, 185 F.3d 459, 464 (5th Cir. 1999), cert. denied, 121 S. Ct. 125 (2000).

The Government argues that knowing possession may be inferred: from Lyons's knowing possession of the same firearm several months prior to his arrest; from the fact that Lyons reminded his wife to retrieve the gun from the police evidence department; from the fact that Lyons was in control of the vehicle and was the only person to drive the vehicle on the day of his arrest; from Lyons's nervousness and attempt to flee; from Lyons's questioning of Arvizo regarding the gun three days after his arrest; and from the fact that Lyons had concealed marijuana under the driver's seat in close proximity to the hidden gun.

As an appellate court, it is not our task to weigh the evidence or determine the credibility of witnesses. United States v. Ybarra, 70 F.2d 362, 364 (5th Cir. 1995). Viewing all the evidence in the light most favorable to the government and deferring to all reasonable inferences drawn by the district

9

court, we conclude that the evidence is sufficient to sustain Lyons's conviction.

Based on the foregoing, we affirm the district court's denial of Lyons's motion to suppress evidence and the conviction.

AFFIRMED.