# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 16, 2016              Decided May 31, 2016

No. 14–3037

UNITED STATES OF AMERICA,
APPELLEE

v.

HIACHOR KPODI,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cr-00214-1)

———

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for the appellant. *A.J. Kramer*, Federal Public Defender, was with her on brief. *Tony Axam Jr.*, Assistant Federal Public Defender, entered an appearance.

*Daniel J. Lenerz*, Assistant United States Attorney, argued the cause for the appellee. *Vincent H. Cohen Jr.*, Acting United States Attorney at the time the brief was filed, *Elizabeth Trosman* and *Elizabeth H. Danello*, Assistant United States Attorneys, were with him on brief.

Before: HENDERSON, SRINIVASAN and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*:  After his May 9, 2013 arrest, Hiachor Kpodi was convicted of possessing with intent to distribute twenty-eight grams or more of cocaine base and possession of a firearm by a felon.   During sentencing, the district court considered, as an aggravating factor, evidence that Kpodi was involved in an unrelated gunfight even though it had prohibited the Government from introducing the same evidence during Kpodi's trial.   The court sentenced Kpodi to 151 months' imprisonment on the cocaine possession count and 120 months' imprisonment on the gun possession count, to run concurrently.   For the reasons that follow, we vacate and remand for resentencing in light of the district court's erroneous reliance on the evidence of the gunfight.

## I.  BACKGROUND

### A.

On May 9, 2013,[1] officers of the District of Columbia Metropolitan Police Department and the Maryland State Police searched a residence that Kpodi shared with a roommate. During the search, police found, *inter alia*, cocaine base on Kpodi, cocaine base and Percocet in his bedroom and a loaded .45 caliber Glock semi-automatic handgun in a kitchen cabinet. On December 3, a grand jury indicted Kpodi on one count of possessing with intent to distribute twenty-eight grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii) (Count I); one count of possessing with intent to distribute a detectable amount of oxycodone, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count II); one count of

---

[1]   All events occurred in 2013 unless otherwise indicated.

possession of a firearm by a felon,[2] in violation of 18 U.S.C. § 922(g)(1) (Count III); and one count of using and carrying a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Count IV).

Before trial, in its December 6 Motion to Admit Other Crimes Evidence (Motion), the Government proffered evidence of four related events: (1) a July 24, 1997 search of Kpodi's then-apartment that produced multiple handguns and twenty ounces of cocaine; (2) an April 4 report of gun shots being fired near Kpodi's house; (3) an April 27 traffic stop and search of Kpodi's vehicle that uncovered a loaded .45 caliber Glock handgun; and (4) an October 30 search of a Silver Spring, Maryland residence where Kpodi often transacted business that led to the seizure of ammunition and 280 grams of crack cocaine. The April 4 shooting forms the factual gravamen of Kpodi's appeal.

On the evening of April 4, Kpodi's neighbors reported gun shots near Kpodi's house. The next day, two residents reported that bullets had struck their vehicles. During the ensuing investigation, crime-scene investigators recovered twenty-nine shell casings near Kpodi's residence, fourteen of which were from a .45 caliber handgun—the same caliber as the handgun subsequently seized in Kpodi's residence on May 9.[3] On April 24, the police interviewed two witnesses who saw Kpodi fleeing to his residence and ducking behind

---

[2] The parties stipulated that Kpodi had previously been convicted of a felony. 1/9/14 Trial Tr. 220.

[3] The shell casings collected during the April 4 shooting, along with the evidence from the April 27 traffic stop, initiated the investigation that led to the search warrant executed at Kpodi's residence on May 9.

vehicles while the shootings occurred. In its Motion, the Government summarized the witnesses' testimony as follows:

> [O]ne witness reported seeing men running up and down the 2200 block of Perry Street while the shots were being fired. This witness indicated that the witness saw . . . [Kpodi] running. A second witness indicated that after hearing the gun shots the witness observed . . . [Kpodi] running from between 2220 & 2222's pathway. This witness also stated [Kpodi] . . . ducked close to the vehicles parked on the odd side of the street as if he was retrieving items, then ran inside his home.

Appellant's App'x (A.A.) 19. The Government argued that the .45 caliber shell casings collected near Kpodi's residence further established his constructive possession of the .45 caliber handgun recovered during the May 9 search, especially in view of the witnesses' reports of seeing Kpodi duck behind the vehicles purportedly to retrieve the shell casings. According to the Government's Motion, the eyewitness testimony and recovered shell casings showed that Kpodi possessed a firearm knowingly and intentionally around the time of his arrest and, accordingly, were admissible under Federal Rule of Evidence 404(b)(2) as evidence that "bears on the identity and the intent of the possessor of the firearm as well as the absence of any mistake or accident regarding its whereabouts." A.A. 20. Kpodi disputed the relevance of this evidence, arguing that neither witness identified any person (including Kpodi) who fired shots or was holding a gun at the time the shots were fired but merely observed him on the neighborhood streets fleeing from the shootings.

During a December 18 hearing, the district court expressed concern regarding the alleged extent of Kpodi's involvement in the events of April 4, stating that it was "quite vague" and that the evidence merely showed that, "[y]ou have clarity that Mr. Kpodi . . . [was] on the street"; "that Mr. Kpodi ran into his house" and that "Mr. Kpodi was ducking behind cars." 12/18/2013 Hr'g Tr. 41. The court further explained that the evidence did not establish whether Kpodi had any active role in the shootings or was merely fleeing from the gun shots.

The court eventually denied the Government's 404(b)(2) Motion with respect to the April 4 gunfight,[4] finding that the "logical leaps" required to establish that Kpodi fired a later-seized Glock on April 4 were "simply too far," especially "since eyewitnesses sufficiently observant to identify the defendant running on the street failed to see him holding a gun." A.A. 55. The court explained that:

> other inferences are just as, if not more, clear: that the defendant's presence in the area was due to the fact that he lived there; that the defendant was running for shelter in his own home to avoid the gunfire; that the defendant was ducking behind cars for cover; and finally,—and most significantly—that the defendant had no gun . . . .

*Id.* (internal quotation marks omitted). Thus, because of the "limited and vague eyewitness testimony" that failed to identify Kpodi as a shooter that night, the district court reasoned that the "probative value of the April 4, 2013

---

[4] The court admitted the evidence of the April 27 traffic stop and October 30 search but excluded the evidence of the July 1997 search.

evidence [was] questionable" and its potential prejudicial effect was "severe" because "[t]he prejudicial effect of having the jury hear the [G]overnment's speculation that the defendant engaged in a gunfight on neighborhood streets in this city, with all of the attendant risk to the safety of innocent bystanders and residents, including children, is significant." *Id.* at 57–58 (internal quotation marks omitted).  Trial began on January 7 and ended on January 10, 2014, with guilty verdicts on Counts I and III and acquittals on Counts II and IV.

**B.**

The district court sentenced Kpodi on June 3, 2014. Kpodi's Presentence Report (PSR) included the April 4 evidence even though the trial court had excluded it before trial.  Kpodi objected to the district court's consideration of that evidence for sentencing, arguing that it was no more relevant for sentencing than it was for Rule 404(b)(2).

The court disagreed, reasoning that:  (1) the PSR "describes the shooting incident on the residential streets around the defendant's residence on April 4"; (2) "two eyewitnesses identify the defendant as being involved"; and (3) "police found bullet casings that matched the same caliber gun found in the defendant's residence during the execution of the search warrant a couple of weeks later."  6/3/14 Hr'g Tr. 11–12.  After acknowledging that it had denied the Government's December 6 Motion, the district court saw "no reason for exclusion from the PSR of this evidence for description of the circumstances that led to the investigation and ultimately to the execution of the search warrant at Mr. Kpodi's home."  *Id.* at 12.

Later in the hearing, during the court's discussion of the 18 U.S.C. § 3553 factors, the court addressed the other-crimes evidence, including the April 4 gunfight:

The events leading to the execution of the search warrant at the defendant's house on May 9th, 2013, while not admitted at trial as being too prejudicial, are chilling.  We read all too frequently in the newspapers when we wake up in the morning about innocent bystanders, including children, inside their homes being accidentally shot by gunfire occurring on the streets, and in this case *two eyewitnesses identified Mr. Kpodi as participating in such a gunfight* outside his home in D.C. a short time before the search warrant was obtained.

While we don't know the precise reason for the gunfight or the defendant's precise role in the gunfight, what is clear from *the defendant's involvement and participation in the gunfight* combined with the loaded guns found in his possession during the [April 27] car-stop in the same month as the street gunfight and in his D.C. home where he stored his drugs is that he was clearly prepared to use a gun as part of his illegal drug business.

To me this is a very important circumstance that the association of the defendant's drug conviction with guns that is a very important consideration in the Court's determination of which sentence recommendation is appropriate in this case.

*Id.* at 47–48 (emphases added).

The PSR calculated Kpodi's base offense level as 32, with an additional two-level enhancement for possession of a dangerous weapon, and calculated his criminal history as III.

The court reduced the total offense level by two due to mitigating circumstances, resulting in a Guidelines range of 151 to 180 months on Count I and 120 months, the statutory maximum, on Count III. The court sentenced Kpodi to concurrent terms of 151 months' imprisonment on Count I and 120 months' imprisonment on Count III. Kpodi timely appealed his sentence. Our jurisdiction arises under 28 U.S.C. § 1291.

## II.  ANALYSIS

Kpodi argues that the district court erred by considering the April 4 evidence when it sentenced him. The Government responds that the court did not abuse its discretion in relying on that evidence during sentencing, notwithstanding it had excluded the same evidence before trial as unduly prejudicial. Alternatively, the Government argues that any error was harmless.

## A.

We review Kpodi's challenge to his sentence for abuse of discretion, applying the two-step approach from *Gall v. United States*, 552 U.S. 38 (2007). First, we "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Id*. at 51. Second, "[a]ssuming that the district court's sentencing decision is procedurally sound," we "then consider the substantive reasonableness of the sentence imposed . . . tak[ing] into account the totality of the circumstances." *Id.*

Because a sentence must "not be based on improper or inaccurate information," *United States v. Lemon*, 723 F.2d 922, 933 (D.C. Cir. 1983) (internal quotation marks omitted), we must determine whether the court relied on "clearly erroneous facts" in reaching the ultimate sentence, *Gall*, 552 U.S. at 51. It is not *per se* error, however, for the sentencing judge to consider facts beyond those found by the jury. *See United States v. Watts*, 519 U.S. 148, 157 (1997) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."); *accord United States v. Settles*, 530 F.3d 920, 923–24 (D.C. Cir. 2008). "[The clearly erroneous] standard applies to the inferences drawn from findings of fact as well as to the findings themselves." *Overby v. Nat'l Ass'n of Letter Carriers*, 595 F.3d 1290, 1294 (D.C. Cir. 2010) (quoting *Halberstam v. Welch*, 705 F.2d 472, 486 (D.C. Cir. 1983)).

According to Kpodi, the district court abused its discretion when it changed tack between trial and sentencing, reasoning pre-trial that the witness testimony and shell casings were not sufficiently probative that Kpodi had fired a weapon or participated in the April 4 shootings but concluding at sentencing that Kpodi was prepared to use guns in furtherance of his illegal drug business in light of the April 4 evidence. We agree. We have not previously determined whether a district court may consider Rule 404(b)(2) evidence during sentencing if it excluded the same evidence as unduly prejudicial before trial and we need not decide whether a categorical bar is warranted. Instead, we believe the district court abused its discretion by relying on a clearly erroneous inference in sentencing Kpodi.

During the pre-trial proceedings, the Government proffered two pieces of evidence to demonstrate that Kpodi

participated in the April 4 shootings: (1) the .45 caliber shell casings collected near Kpodi's house that matched the caliber of the gun police later found when they searched his residence; and (2) the testimony of the two witnesses interviewed by the police. But as the district court explained before trial, this evidence, standing alone, did not support the Government's inference that Kpodi fired a gun during the shootings or held a weapon while fleeing. According to the court, the eyewitness testimony was vague—it established only that Kpodi was nearby when the shooting occurred, ran from the gunshots and ducked behind a car. The .45 caliber shell casings also did not advance the Government's argument—they were not linked specifically to Kpodi's gun and therefore had little probative value with respect to the court's eventual conclusion that Kpodi was prepared to use guns in the furtherance of his drug trade. At best, one witness stated that Kpodi ducked behind vehicles "as if he was retrieving items," A.A. 19, but such an ambiguous statement inadequately supports an inference that Kpodi in fact picked up shell casings similar to those later found at the scene, much less that he used or was carrying a weapon at the time of the shootings. The district court therefore correctly concluded that "other inferences are just as, if not more, 'clear,' " A.A. 55; that is, it was just as likely that Kpodi fled from gunfire and took shelter behind a car.

The district court's pre-trial analysis was eminently reasonable. The court, however, switched course during sentencing. The court stated that the April 4 incident "shows that . . . there's no surprise that he also used [guns]," and "as [disturbing] as it is, that he would engage in a shootout on the residential streets of the city." 6/3/14 Hr'g Tr. 12. During its section 3553 analysis, the court referred to this evidence as "chilling," tying it to "children, inside their homes being accidentally shot by gunfire occurring on the streets." *Id.* at 47–48. Critically, the court claimed that the eyewitnesses

"identified Mr. Kpodi as *participating* in such a gunfight," *id.* at 48 (emphasis added), even though the witnesses merely observed Kpodi fleeing, ducking and appearing to pick up something from the ground. The court recognized the uncertainty of Kpodi's role in the April 4 shootings, stating that "we don't know the precise reason for the gunfight or the defendant's precise role in the gunfight" but it nevertheless believed that this evidence, in combination with the admitted evidence of the April 27 traffic stop and October 30 search, showed that Kpodi "was clearly prepared to use a gun as part of his illegal drug business." *Id.* at 48. The court noted that the April 4 evidence was "a very important circumstance" and "a very important consideration in the Court's determination of which sentence recommendation is appropriate." *Id.* Nevertheless, in view of the vagueness of the evidence of Kpodi's actions on April 4, the district court's inference that Kpodi either fired a weapon, was holding a gun while fleeing or even participated in the April 4 shooting was clearly erroneous. The district court therefore abused its discretion by relying on that clearly erroneous inference during sentencing.

The Government, however, argues that the district court did not act inconsistently in its pre-trial analysis and in its subsequent sentencing. According to the Government, the district court excluded the April 4 evidence before trial because the Government failed to adequately support its argument that Kpodi *used* a gun during the shooting. The Government claims that the court's earlier analysis, however, differs from its conclusion reached during sentencing that Kpodi *participated* in the April 4 shooting, which, in its view, is well supported by the witness testimony and the recovered shell casings. *See* Appellee's Br. 21 ("Nowhere in its order addressing the [G]overnment's motion did the district court find that appellant had *not* been involved with or participated in

the April 4, 2013, shooting incident (by, for example, picking up spent shell casings off the ground, or aiding other individuals who were shooting and/or being shot at)." (emphasis in original)).[5]

Again, the Government's argument runs contrary to the district court's statements during sentencing. The court did not conclude that Kpodi "would engage in a shootout" based solely on the fact he *might* have bent over to pick up shell casings; the court plainly viewed him as a shooter based on the statements it made during sentencing. 6/3/14 Hr'g Tr. 12. For example, the court discussed the frequency of shootings that could harm "innocent bystanders, including children." *Id.* at 47. Although it did not "know . . . the defendant's precise role in the gunfight," the court's discussion of the April 4 event and of Kpodi's role therein makes clear that Kpodi's "participation" did not refer to his cleaning up evidence. *Id.* at 48. More to the point, the court stated that Kpodi's "involvement and participation in the gunfight" supported its conclusion that he "was clearly prepared to *use a* gun as part of his illegal drug business." *Id*. (emphasis added). That inference is supported by neither the witness testimony nor by the fact that shell casings were recovered near Kpodi's residence. The April 4 evidence does not support the conclusion that Kpodi used a gun in his illegal drug business; at most it shows that Kpodi lived near the area where the shooting occurred and might have retrieved evidence. Although the evidence from the April 27 traffic stop and October 30 search may ultimately support the district court's conclusion that Kpodi had a propensity to use firearms in connection with his

---

[5] *See also* Oral Arg. Recording at 18:20–19:20 (Government iterating that, even if the evidence did not show that Kpodi fired a weapon on April 4, it demonstrated Kpodi's participation in the shootings by, for example, his picking up shell casings at the scene).

drug dealings, the inference that the *April 4* evidence demonstrated that propensity was clearly erroneous.[6]

## B.

The Government further argues that any error by the district court in its consideration of the April 4 evidence was harmless because the court's reliance on that evidence did not affect Kpodi's sentence.   We disagree.

Under Federal Rule of Criminal Procedure 52(a), "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."   FED. R. CRIM. P. 52(a).   If the error affects no constitutional rights, it is harmless unless it had a "substantial and injurious effect or influence."[7]   *United States v. Powell*, 334 F.3d 42, 45 (D.C.

---

[6] Even were we to adopt the Government's argument that the district court was consistent in its pre-trial conclusion and its consideration of the April 4 evidence during sentencing, the evidence would nonetheless fail to support the inference that Kpodi was prepared to use a gun in furtherance of his drug trade.   The *only* evidence potentially showing that Kpodi picked up shell casings that evening was a single witness statement that Kpodi, while fleeing, "ducked close to the vehicles parked on the odd side of the street as if he was retrieving items."   A.A. 19.   No witness identified him picking up *any* item, including shell casings.   And the fact that the shell casings match the type of gun later seized from Kpodi's residence is largely irrelevant—the Government did not connect those recovered shell casings to the gun later seized from Kpodi's residence.

[7] In contrast, "[a] *constitutional* error is harmless" only "if it appears 'beyond a reasonable doubt that the error complained of did not contribute to the [sentence] obtained.' "   *United States v. Simpson*, 430 F.3d 1177, 1184 (D.C. Cir. 2005) (second alteration in original) (emphasis added) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).   Because the Government fails under both the

Cir. 2003) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). "[I]n most cases, [this] means that the error must have been prejudicial: [i]t must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993); *see also United States v. Williams*, 503 U.S. 193, 203 (1992) ("[O]nce the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.*, that the error did not affect the district court's selection of the sentence imposed."). However, "[i]f we ha[ve] any doubt as to whether the erroneous understanding the District Court expressed . . . affected the District Court's sentencing decision, we [will] not hold the error to be harmless." *United States v. Ayers*, 795 F.3d 168, 176 (D.C. Cir. 2015). "The government bears the burden of proving the absence of such an effect." *United States v. Linares*, 367 F.3d 941, 952 (D.C. Cir. 2004).

We have not previously addressed harmless error in the context of a sentencing court's reliance on a clearly erroneous inference.[8] The Government has nevertheless failed to

_____

more stringent constitutional error and the less stringent non-constitutional error analysis, we need not determine the appropriate standard here.

[8] The United States Court of Appeals for the Fifth Circuit discussed an analogous situation in *United States v. Wright*, 24 F.3d 732 (5th Cir. 1994). The district court in *Wright* granted an upward departure on the basis of a factual finding—that Wright constructively possessed a gun—which the court of appeals found to be clearly erroneous. *Id.* at 734–35. The court explained that, "[s]ubtracting that incident from the quantum of facts the court used in deciding to depart upward, we cannot conclude whether the sentencing court still would have decided to depart upward and, if so, by how much. In other words, we cannot conclude that the court's error was harmless." *Id.* at 736. *Wright* demonstrates that at least

establish that the district court's discussion of the April 4 shooting did not affect its sentencing decision. The Government first argues that the error was harmless because Kpodi was given a sentence at the bottom of the Guidelines range. Kpodi requested a below-Guideline sentence because of, *inter alia*, his continuing efforts to remain part of his children's lives. The district court recognized this consideration during its balancing of the section 3553 factors[9] and could have granted a downward departure in its discretion. The court declined to grant the departure, instead imposing a sentence at the low end of the Guidelines range. On resentencing, the court remains free to grant a downward departure as requested in light of Kpodi's interest in his family when rebalancing the section 3553 factors once the April 4 evidence is removed from consideration. But the fact that Kpodi was sentenced to the bottom of the Guidelines range is

one of our sister circuits has remanded for resentencing on the basis of the district court's reliance on a clearly erroneous factual finding. *See also United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) ("A sentence imposed as a result of a clearly erroneous factual conclusion will generally be deemed 'unreasonable' and, subject to the doctrines of plain and harmless error, will result in remand to the district court for resentencing."). The Government claims that *Wright* is distinguishable because the district court in *Wright* heavily relied on the erroneous factual finding in granting the upward departure but the April 4 shooting evidence was only one of multiple considerations the district court reviewed in reaching the 151–month sentence. We remain unconvinced that the April 4 evidence played as minor a role in sentencing as the Government contends.

[9] *See* 6/3/14 Hr'g Tr. 49 ("And it is because . . . he has indicated his concern about playing a role in his kids' lives, which is not a newfound calling but one that seems to have been part of his history so far, that I feel that rather than sentence at the midpoint of the appropriate Guideline range, I'm going to impose a sentence at the low end of the Guideline range.")

itself insufficient to render the court's consideration of the April 4 evidence harmless.

The Government also argues that the district court's error was harmless because the April 4 shooting was one of multiple incidents that led the court to conclude that Kpodi was likely to use guns in furtherance of his drug transactions. The Government's argument, however, again mischaracterizes the tone of the sentencing hearing. As discussed, the court stated that "there's no surprise that [Kpodi] also used" guns and "that he would engage in a shootout on the residential streets of the city." 6/3/14 Hr'g Tr. 12. The court called the April 4 incident "chilling," referenced it specifically in discussing the harm to "innocent bystanders, including children," and explained that it was a "very important circumstance" and "very important consideration" in determining "which sentence recommendation is appropriate." *Id.* at 47–48. The district court considered the other Rule 404(b)(2) evidence as well as the April 4 evidence during its balancing of the section 3553 factors but it is a stretch for the Government to claim that the court's reference to the April 4 gunfight had no effect on its "selection of the sentence imposed." *Williams*, 503 U.S. at 203. On the basis of the sentencing transcript, we cannot conclude that the consideration of the April 4 evidence did not have a "substantial and injurious effect or influence" on Kpodi's sentence. *Powell*, 334 F.3d at 45.

For the foregoing reasons, we vacate Kpodi's sentence and remand for resentencing.

*So ordered.*