# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 13, 2019     Decided June 11, 2019

No. 17-3070

UNITED STATES OF AMERICA,
APPELLEE

v.

ALICIA NORMAN,
APPELLANT

———

Consolidated with 17-3073, 17-3074

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:16-cr-00144-TSC-3)
(No. 1:16-cr-00144-TSC-2)
(No. 1:16-cr-00144-TSC-1)

———

*Deborah A. Persico*, appointed by the court, argued the cause for appellant Brantley. *Stephen C. Leckar*, appointed by the court, argued the cause for appellant Rowe. *Charles J. Soschin*, *pro bono*, argued the cause for appellant Norman. With them on the briefs was *Joseph R. Conte*, appointed by the court.

*James Pearce*, Attorney, U.S. Department of Justice, argued the cause for appellee. On the brief was *Molly Gaston*,

Trial Attorney. *Elizabeth Trosman*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed *Senior Circuit Judge* SENTELLE.

Opinion concurring in the judgment filed by *Circuit Judge* HENDERSON.

SENTELLE, *Senior Circuit Judge*: Appellants Alicia Norman, Kendra Brantley, and Deenvaughn Rowe appeal from judgments of conviction on multiple counts of conspiracy to commit bribery, bribery, and conspiracy to distribute and possess marijuana with the intent to distribute. Rowe and Brantley were convicted on all charges, and Norman on the charges of bribery and conspiracy to commit bribery. Appellants seek reversal of all judgments of conviction on a variety of allegations of error. We hold that none of the allegations of error have merit and affirm the judgments of the district court. Rowe also raises a colorable claim of ineffective assistance of counsel. Obedient to our circuit practice, we are remanding the claim for further proceedings.

## BACKGROUND

During the time of the commission of the alleged crimes, all appellants were employees of the United States Postal Service (USPS). Rowe was the acting station manager at the River Terrace Post Office in Northeast Washington, D.C. Brantley and Norman were letter carriers at the Lamond-Riggs Post Office. Prior to entering his position as acting manager at the River Terrace Office, Rowe had worked with his co-defendants at the Lamond-Riggs station.

According to the evidence at trial, Rowe knew of packages being sent through the USPS from California to addresses in the Lamond-Riggs area. Some of the packages had incomplete addresses, others had nonexistent addresses. Rowe used his USPS computer to track the packages from the west coast to the Lamond-Riggs Post Office. When one of the packages he was tracking arrived, Rowe would notify Brantley or Norman. The notified carriers would then deliver the package to individuals on the street rather than to the delivery addresses on the packages.

Federal investigators surveilled the activity of the three postal employees. The evidence at trial, including surveillance tapes, revealed that Rowe would scan the packages, determine that they were the ones in which he was interested, and that the co-defendants would receive cash from the driver of a white Range Rover in exchange for the packages. The evidence also revealed texts between Rowe and the co-defendants providing him with real-time knowledge of their whereabouts and actions.

Between September of 2015 and August of 2016, USPS investigators tracked 131 suspicious packages, all of which originated from California, were tracked from Rowe's computer, and shared similar characteristics. All were similar size and weight and had similar handwriting and addresses. Investigators opened eight of the packages and determined that they contained bulk marijuana. Investigators marked six other packages with markings that would be visible to agents conducting surveillance the following day. Brantley delivered the six marked packages to a man on the street and scanned them as delivered.

Further evidence revealed that during the period of the conspiracy, Rowe obtained considerable otherwise unexplained wealth. For example, he made approximately twelve unexplained cash deposits totaling $47,960 and another $7,000

in unexplained cash equivalent deposits. In addition, at the time of the arrest, the agents found $3,600 in cash in Rowe's Mercedes and $6,000 in cash in the inner pocket of a jacket in his closet. Rowe also owned a Porsche Panamera sports car and took three vacations to the Caribbean during the time of the conspiracy. His USPS take-home pay, after various deductions and child support, was $16,000 per year.

The grand jury returned an indictment charging all appellants with conspiracy to commit bribery in violation of 18 U.S.C. § 371; bribery in violation of 18 U.S.C. § 201(b)(2); and conspiracy to distribute, dispense, and possess with the intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846. The indictment also alleged that Rowe's conduct as a member of the conspiracy involved a quantity of 100 kilograms or more of marijuana.

Before trial, Brantley expressed an intention to plead guilty, but eventually pleaded not guilty and proceeded to trial with the other defendants. After a six-day trial, the jury found Rowe and Brantley guilty on all counts, and Norman guilty of bribery and conspiracy to commit bribery. Norman was found not guilty of the distribution and conspiracy charges.

Appellants raise various challenges to their convictions. We find five of the challenges worthy of discussion. As to the other allegations of error, we have given the arguments due consideration and find them without merit.

A. *Brantley's Plea*

Brantley argues the district court impermissibly interfered with plea negotiations in violation of Rule 11 of the Federal Rules of Criminal Procedure. We disagree.

Before trial, Brantley had expressed an intention to plead guilty in a bargained plea. The court scheduled a hearing to conduct the Rule 11 proceedings, which eventually led to a total of three hearings on that subject. In the first hearing on July 6, 2017, during the plea colloquy, the trial judge asked Brantley if she had read the factual statement associated with her plea agreement. Brantley said she had but asked to review the statement again with her attorney. While they were reviewing the document, the judge heard Brantley say, "I did not," in reference to the factual statement.

Based on the concern raised by that statement, the judge conducted further questioning of the defendant and determined that there had not been a meeting of the minds between the prosecution and the defense on the terms of the factual statement to be introduced as part of the proceedings on the bargained plea. There was, apparently, disagreement over whether Brantley was admitting that she knew that the packages she delivered contained marijuana. After Brantley's attorney confirmed that the parties could not agree on the wording of the factual statement, the judge advised that she was willing to consider "anything that the parties [could] agree to" and proposed to schedule a hearing for the next day to allow time for the parties to sort out their differences.

The next day, July 7, the district judge referred the question to a magistrate judge for further proceedings. At that hearing, the magistrate judge asked whether Brantley had discussed with her attorney that by accepting the plea bargain, she would be waiving her right to bring collateral attacks on her sentence. The government advised that the term "collateral attack" was not included in the plea agreement but took the position that the concept was encompassed by the waiver provision contained in the agreement. Again, the court was unable to determine that Brantley was voluntarily agreeing to the bargained plea and, at

the request of the parties, directed that the matter be heard again at a later date.

As planned, a third hearing took place on July 12 before the district judge. At the third hearing, Brantley expressed her intent to plead guilty to two of the counts without the benefit of a plea agreement and go to trial on the third. The judge advised Brantley that she was free to go to trial on all charges or plead guilty to some and go to trial on others. The court further advised Brantley of the risks and benefits associated with trial and with a guilty plea. Brantley elected to go to trial on all counts. Before this court Brantley argues that "the district court . . . interfered in plea negotiations." Appellants' Br. 11 (capitalization edited from the original).

At the beginning of our review, we note that Brantley did not raise the current objection before the trial court. We review allegations of error in Rule 11 proceedings raised for the first time on appeal for plain error. *United States v. Davila*, 569 U.S. 597, 608 (2013). Under this standard, "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *United States v. Olano*, 507 U.S. 725, 732 (1993). The "error must be clear or obvious, rather than subject to reasonable dispute," *United States v. Murray*, 897 F.3d 298, 304 (D.C. Cir. 2018), and must "seriously affect the fairness, integrity or public reputation of judicial proceedings," *Olano*, 507 U.S. at 736–37 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

Federal Rule of Criminal Procedure 11(c)(1) provides that "[t]he court must not participate in [plea agreement] discussions." Brantley argues that the district court improperly interfered with the plea process during each of her three plea hearings. We disagree. Rule 11 requires a district court to "address the defendant personally in open court . . . and determine that the defendant understands [her rights],"

"determine that the plea is voluntary," and "determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(1)–(3). The trial judge appropriately questioned Brantley's disagreement with the factual statement in the July 6th hearing. Upon hearing Brantley state "I did not," while discussing the factual statement, the district court had a duty to investigate further.

In the July 7th hearing, the judge appropriately questioned Brantley as to whether she understood she was waiving her right to collaterally attack her sentence. Rule 11 requires a judge, prior to accepting a guilty plea, to "address the defendant personally in open court" and "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1). The judge's line of inquiry directly fulfilled this requirement.

Finally, in the July 12th hearing, much of the discussion that took place during the plea hearing centered on whether it was permissible for Brantley to plead only to the specific acts described by statute, rather than to the acts alleged in the indictment. Despite the trial judge's initial hesitation, she clarified that she would accept whatever plea the parties agreed to, and that it was entirely up to Brantley whether she pled guilty or went to trial. Brantley argues the trial judge went too far in describing the benefits and risks associated with going to trial and with a guilty plea, but such a discussion falls squarely within the trial judge's responsibility to ensure any plea is knowing, voluntary, and has factual basis. *See* Fed. R. Crim. P. 11(b)(1)–(3). No statements made in any of the three hearings meet the plain error standard required here for Brantley's argument to succeed.

Accordingly, we find no error.

B. *The Calculation of Guidelines*

All defendants allege error in the district court's calculation of guidelines. Appellant Norman claims that the district court erred by applying the drug trafficking guideline instead of the bribery guideline, even though Norman was acquitted of all drug charges by the jury.

Throughout her six-day trial, Norman maintained that she was unaware that the packages she was being bribed to misdeliver contained drugs. She was acquitted of all drug charges by the jury. During sentencing, however, the district court said that Norman "looked like she knew what she was doing" in surveillance video of the transactions, and concluded that her relationship with an uncharged co-conspirator meant that she must have "known what was up."

Under the Sentencing Guidelines, the base offense level for a bribery offense is fourteen. U.S.S.G. § 2C1.1. However, because the sentencing court found that the bribery was part of a conspiracy to distribute marijuana, the court applied the drug trafficking guidelines for Norman's bribery offense, resulting in a base offense level of twenty-four. U.S.S.G. §§ 2D1.1, 2C1.1. The court found that Norman was a minimal participant in the criminal activity and that she had accepted responsibility for her act, and therefore was entitled to a six-point deduction, resulting in an overall offense level of eighteen and a recommended Guidelines sentence of twenty-seven to thirty-three months imprisonment. Citing Norman's "significant family obligations," the court elected to depart downward from that range, sentencing Norman to eighteen months.

Had the district court started from the base offense level from the bribery guidelines and applied the same deductions, Norman would have had an overall offense level of eight,

resulting in a suggested Guidelines sentence of zero to six months. U.S.S.G. ch. 5, pt. A (sentencing table). In theory, the court could have varied upwards and sentenced Norman to eighteen months regardless. *See Gall v. United States*, 552 U.S. 38, 49 (2007). But because the court actually varied *downward* from the Guidelines range, it is difficult to imagine that the use of acquitted conduct and the associated twenty-seven month change to her recommended sentence did not have a significant impact on the amount of time Norman will spend in prison.

This Court has recognized that "long-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence." *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008). In choosing to sentence Norman under the drug trafficking guideline, the district court has acted within the bounds provided by precedent.

Judges have expressed concern about basing sentencing on acquitted conduct. *See United States v. Jones*, 744 F.3d 1362, 1369 (D.C. Cir. 2014). "Allowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial." *United States v. Bell*, 808 F.3d 926, 928 (D.C. Cir. 2015) (Kavanaugh, J., concurring). Justice Scalia wrote, in a dissent from denial of certiorari joined by Justices Thomas and Ginsburg, that "'[t]his has gone on long enough," and that the Supreme Court should take up the issue "to put an end to the unbroken string of cases disregarding the Sixth Amendment—or to eliminate the Sixth Amendment difficulty by acknowledging that all sentences below the statutory maximum are substantively reasonable." *Jones v. United States*, —— U.S. ——, 135 S. Ct. 8, 9, 190 L. Ed. 2d 279 (2014) (Scalia, J., dissenting).

The Supreme Court has not yet done what Justice Scalia suggested. Therefore, we continue to recognize that "[w]hatever the merits of Justice Scalia's argument, it is not the law." *Jones*, 744 F.3d at 1369. This Court, and other courts of appeals, have reached the conclusion that sentencing based on acquitted conduct is constitutional. *See id.* (collecting cases). We cannot find legal error.

Brantley argues that the district court erred in calculating the quantity of drugs attributed to her. As we have held, the district court makes findings of drug quantities under a preponderance of the evidence standard, and we review those factual findings only for clear error. *See United States v. Burnett*, 827 F.3d 1108, 1120 (D.C. Cir. 2016). The evidence before the district court connected Brantley's acts to the transportation of a significant quantity of marijuana. After applying a conservative method of calculation, the district court determined that 100 kilograms or more of marijuana was attributable to Brantley. "A base offense level . . . is derived from a defendant's 'relevant conduct.' For drug offenses, 'relevant conduct' includes the quantity of drugs involved in the offense." *Id.* (internal citations omitted). The district court followed this correct understanding of the law in calculating the offense herein.

Rowe contends the district court erred in imposing a four-point organizer-manager enhancement in sentencing him rather than a three-point supervisor's role. This court reviews a "district court's fact-specific determination that a defendant was an 'organizer or leader' or a 'manager or supervisor'" under a due deference standard. *United States v. Olejiya*, 754 F.3d 986, 990 (D.C. Cir. 2014) (internal citations omitted). Due deference is "somewhere between *de novo* and 'clearly erroneous.'" *United States v. Tann*, 532 F.3d 868, 874 (D.C. Cir. 2008) (internal citations omitted).

The Sentencing Guidelines provide that a four-level increase to a defendant's offense level is appropriate "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). In determining whether a four-level increase for an organizer or leader, or a three-level increase for management or supervision is appropriate, the court should consider such factors as "the exercise of decisionmaking authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *See* U.S.S.G. § 3B1.1(b); U.S.S.G. § 3B1.1 cmt.4.

The district court did precisely what the Guidelines contemplate. The scheme was extensive, involved at least four persons in the east coast and an unknown number of persons involved in the mailing. Rowe recruited, managed-supervised, and took a large share of proceeds. Under the applicable standard of review, or probably any other standard, the district court did not err.

C. *Claims of Ineffective Assistance of Counsel*

Both Brantley and Rowe allege that their counsel were ineffective at trial. Brantley advances no colorable claim. Each of the arguments she makes for the first time on appeal concerns the failure of her counsel to make some objection as to some alleged error of the court, which we have already dispensed with in the above analysis.

As to Rowe, however, the government concedes that a remand for further inquiry is necessary. Rowe contends, *inter*

*alia*, that he did not have the opportunity to review discovery or call witnesses who wanted to testify at trial. Under *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984), ineffective assistance occurs when an attorney makes errors that (1) are "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that deficient performance was prejudicial, *i.e.*, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Without opining on the validity of Rowe's claims, we do determine that he has at least made a *colorable* proffer.

We have held that when a defendant makes a colorable claim of assistance for the first time on direct appeal, the proper practice is to remand the claim for an evidentiary hearing unless the record shows that the defendant is not entitled to relief. *See United States v. Rashad*, 331 F.3d 908, 909–10 (D.C. Cir. 2003). Therefore, we remand that single question to the district court for further proceedings.

## CONCLUSION

Save for the single question of whether Rowe was prejudiced by ineffective assistance of counsel, we affirm in full the judgments of the district court. We remand that single question for further proceedings.

*So ordered.*

KAREN LECRAFT HENDERSON, *Circuit Judge*, concurring in the judgment: I write separately to note my reservations regarding the majority's discussion of the Rule 11 issue. Rule 11 requires the district court to ensure the voluntariness and factual basis of a plea without participating in plea discussions. *See* Fed. R. Crim. P. 11(b)(2) ("Before accepting a plea of guilty . . ., the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)."); *id.* 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."); *id.* 11(c)(1) ("An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. The court must not participate in these discussions."). A premise of the Rule is that our system works best when each party plays its assigned role—judge and counsel alike. In my view, the district court improperly usurped the role of defense counsel on July 6th and July 12th. On July 6th, the district court interrupted the defendant while she was conferring with her counsel off the record. I disagree with my colleagues' view that the district court's "duty" under Rule 11 extends to interrupting an off the record conversation between a defendant and defense counsel. Maj. Op. 7. Having directed the defendant to discuss the plea with counsel, the district court should have waited for the defendant or her counsel to address the court on the record before inquiring further. More troubling, on July 12th, the defendant could have believed the district court was advising her not to plead guilty to only one of the counts. Indeed, at one point the district court said to defense counsel in the presence of the defendant: "I'm really wondering what's the benefit to your client in doing this instead of just going to trial and putting the government to its test where she may end up with the same thing . . . . I'm not sure what she's gaining." I disagree with the majority's view that this statement "falls squarely within the trial judge's responsibility to ensure any plea is knowing, voluntary, and has factual basis." *Id.* 8. Although I understand and appreciate the

district court's impulse to ensure the voluntariness and factual basis of the plea, I believe that impulse led it astray on these two dates. I do not believe the district court's error was "plain," however, and therefore reach the same ultimate outcome as my colleagues. *See United States v. Davila*, 569 U.S. 597, 608 (2013) (applying "plain error" standard of review to claim of Rule 11 violation); *United States v. Olano*, 507 U.S. 725, 734 (1993) ("plain error" must be "clear" or "obvious").

I also distance myself from my colleagues' rather reluctant recognition of precedent upholding the sentencing judge's discretion to factor in acquitted conduct in imposing sentence. Maj. Op. 9–10. I think the precedent is sound for many reasons, including that the burdens of proof differ at trial and sentencing and that the trial judge—who hears the same evidence the jury hears—is permitted to find all manner of facts by a preponderance of the evidence, facts that have not been found by the jury beyond a reasonable doubt. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proved by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction."); *id.* ("[T]he Supreme Court has 'never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.'" (quoting *United States v. Booker,* 543 U.S. 220, 233 (2005))). I also believe that a sentencing judge exercising his broad discretion may consider acquitted conduct in order to address partial jury nullification in an appropriate case.