# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 4, 2019          Decided March 27, 2020

No. 18-3073

UNITED STATES OF AMERICA,
APPELLEE

v.

SHANE BROWNE,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cr-00241-1)

———

*Michael F. Smith* argued the cause for appellant. With him on the brief was *Max F. Maccoby*.

*Patricia A. Heffernan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, and *Stephen J. Gripkey*, Assistant U.S. Attorneys.

Before: HENDERSON and PILLARD, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Appellant, Shane Browne, was convicted of kidnapping in violation of 18 U.S.C. § 1201(a)(1) and unlawful possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). Browne now appeals that conviction, arguing that the offenses were improperly joined and challenging the district court's failure to *sua sponte* sever the kidnapping charges from the drug charges and order separate trials. He also challenges the district court's failure to *sua sponte* exclude certain evidence and argues that the district court erred in refusing a specific jury instruction and relying on acquitted and unlitigated conduct at sentencing. Finally, Browne raises a variety of claims that his trial attorneys were ineffective, violating his Sixth Amendment right to counsel.

For the following reasons, we affirm the judgment of the district court. Consistent with our usual practice, we remand the ineffective assistance of counsel claims to the district court to assess them in the first instance.

## I.   BACKGROUND

According to the evidence at trial, on December 11, 2017, Browne ordered a Lyft from his apartment in Washington, D.C., to a motel in Aberdeen, Maryland. Before the ride began, Browne called the Lyft driver, Ulises Flores, to inquire whether he would be willing to complete a roundtrip. Flores agreed, but Browne never updated the trip in the Lyft app. During the drive, Flores overheard Browne on a phone call discussing email encryption and another person who was prepared to take over his "business" if anything should happen to him. J.A.

132–33.   Flores  later  testified  that  Browne  smelled  like marijuana when he entered the car.

Once  in  Aberdeen,  Browne  directed  Flores  to  a McDonald's parking lot near the original destination.  Because Browne never updated the trip in the Lyft app to reflect the roundtrip,  Flores  ended  the  trip  when  they  arrived  at  the McDonald's.  After Browne got out of the car, Flores remained in  the  McDonald's  parking  lot  for  over  seventeen  minutes. During that time, he got coffee, visited a restroom, cleaned his car, and called his wife.  Flores initially told police that Browne had asked him to wait for five to ten minutes, but he testified at trial that Browne did not ask him to wait at all.

Eventually, Browne returned to Flores's car and placed a suitcase in the trunk.  Flores got out of the car to confront Browne, but Browne shook Flores's hand and asked Flores to drive him home.  Flores refused, but Browne entered the car anyway and Flores followed.  Flores testified that, once in the car, Browne put a gun to his head and told him to drive back to Browne's apartment in D.C.

Flores recounted that Browne kept the gun next to his head for the entire drive.  During this time, he again overheard Browne on his phone, this time letting someone know that "Ulises" was driving him home.  J.A. 162–63.  Although he did not use the Lyft app on the return trip, Flores was able to email Lyft while Browne was distracted and ask someone to call the police because he was "in trouble."  J.A. 164–65.  When they arrived back at Browne's apartment, Browne gave Flores $100 and retrieved the suitcase.

Flores drove several blocks and then called Lyft again. While on hold with Lyft, he connected to OnStar and described the situation.  The OnStar operator offered to call 911.  Flores

initially refused but after a few minutes accepted the offer and spoke with police. He explained the incident and stated that he thought Browne was a drug dealer.

Later that evening, police arrested Browne at his apartment. The officers noticed a strong smell of marijuana coming from Browne's apartment, and Browne told them that he had been smoking marijuana. The police did not immediately search Browne's apartment, but did search other areas of the apartment building looking for a gun or ammunition.

The next day, after gathering more information and interrogating Browne, officers obtained and executed a search warrant for Browne's apartment. In the apartment, police found a money counter, a heat sealer, drug paraphernalia, more than $35,000 in cash, and seven suitcases and other containers—some of which were filled with heat-sealed bags containing marijuana. In total, the police recovered approximately 78 pounds of marijuana in Browne's apartment, but never found a gun in the apartment or the surrounding areas.

On February 27, 2018, the government filed a superseding indictment, charging Browne with kidnapping in violation of 18 U.S.C. § 1201(a); using, carrying, possessing, and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii); unlawful possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D); kidnapping while armed in violation of D.C. Code §§ 22-2001, 4502; two counts of possession of a firearm during a crime of violence or dangerous offense in violation of D.C. Code § 22-4505(b); and assault with a dangerous weapon in violation of D.C. Code § 22-402. After a jury trial, Browne was convicted of federal kidnapping and unlawful possession

of marijuana with intent to distribute, but acquitted of all firearms charges.

As the trial transcripts make apparent, in its Presentence and Investigation Report ("PSR"), the probation office calculated an adjusted offense level of 34 for the kidnapping conviction under the U.S. Sentencing Guidelines. Specifically, it concluded that the base offense level for kidnapping is 32 and that a two-level increase could be applied if a dangerous weapon was used. It also calculated an adjusted offense level of 16 for the marijuana conviction. Based on this calculation, the Sentencing Guidelines imprisonment range was 151 months to 188 months for the kidnapping conviction and 60 months for the marijuana conviction.

The district court ultimately sentenced Browne to concurrent terms of 176 months for kidnapping and 60 months for unlawful possession with intent to distribute marijuana. The court found by a preponderance of the evidence that Browne used a dangerous weapon in the kidnapping, despite the jury's acquittal on all firearms charges. Based on this finding, the court increased the base offense level by two levels as recommended in the PSR. In determining the final sentence, the district court also found that the kidnapping was in furtherance of Browne's drug trafficking, which it concluded was an aggravating factor for the kidnapping.

## II.   DISCUSSION

On appeal, Browne presents issues which he did not raise at trial. Under Federal Rule of Criminal Procedure 52(b), "[a] plain error that affects substantial rights may be considered even though it was not brought to the [district] court's attention." To demonstrate plain error, the appellant must satisfy three requirements: "First, there must be an error that

has not been intentionally relinquished or abandoned. Second, the error must be plain—that is to say, clear or obvious. Third, the error must have affected the defendant's substantial rights, which in the ordinary case means he or she must 'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (internal citations omitted) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). If all three conditions are satisfied, "the court of appeals should exercise its discretion to correct the forfeited error if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

## A. Joinder and Severance

First, Browne argues that the kidnapping and drug-related charges were improperly joined. At no time before or during trial did Browne object to the joinder of the charges or move for a severance. There is of course nothing inherently erroneous about including multiple charges in one indictment. "[An] indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).

Rule 8(a) is construed liberally, but we have emphasized it "is not infinitely malleable: it cannot be stretched to cover offenses . . . which are discrete and dissimilar and which do not constitute parts of a common scheme or plan." *United States v. Richardson*, 161 F.3d 728, 733 (D.C. Cir. 1998). In *Richardson*, we explained that "a 'but for' sequential

relationship" does not create a logical relationship between "offenses discrete and dissimilar on their faces." *Id.* at 734. Such "[o]ffenses do not become logically related solely by way of an intervening arrest; that is, the fact that an intervening arrest brings preceding and succeeding offenses together temporally or precipitatively simply does not suffice to create the logical relationship contemplated by Rule 8." *Id.* The analysis of whether the charges are properly joined "focuses solely on the indictment and pre-trial submissions," not the evidence introduced at trial. *United States v. Gooch*, 665 F.3d 1318, 1334 (D.C. Cir. 2012). Further, even if counts are properly joined, the district court retains discretion to sever them and order separate trials "[i]f joinder . . . appears to prejudice a defendant." Fed. R. Crim. P. 14(a).

Specifically, Browne argues that the superseding indictment does not depict the kidnapping and drug-related charges as one transaction. He asserts that, beyond the intervening arrest, there is no logical relationship between the sets of charges. He argues that despite his failure to move for severance, the district court erred because it did not *sua sponte* sever the charges and order separate trials. We disagree.

From the discussion above, it is obvious that the question of severance of charges in an indictment is not one that presents a bright line jumping to the eyes of a trial judge and alerting him that he should immediately *sua sponte* save the defendant from himself by presenting a remedy he has not asked for in order to resolve a problem to which he has not objected. On the record, it was not plainly erroneous to conclude that the kidnapping and drug-related charges "are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). After arriving at the McDonald's in Aberdeen, Browne returned to Flores's car and placed a suitcase in the trunk. According to the joint statement of the case, he then held Flores

at gunpoint as he directed Flores to drive him back to his apartment in Washington, D.C.  J.A. 67.  The next day, the police executed a search warrant at Browne's apartment and "recovered approximately 78 pounds of marijuana, approximately $35,000 in currency, a cash-counting machine, and other items."  J.A. 68.  When the officers executed the search warrant, "they found more than 40 pounds of suspected marijuana distributed among a number of items, including several suitcases.  When the defendant went up to Maryland, he returned with a suitcase he had not had in his original possession."  Supplemental Appendix ("S.A.") 2.  Thus, unlike the situation in *Richardson*, *supra*, the presence of suitcases during the kidnapping and at the apartment meant that it was not solely the but-for connection that brought the two charges together.  Rather, the charges could be seen as connected by those common items and their evident utility in transporting marijuana.  And trying the charges together was not so clearly prejudicial to Browne to warrant *sua sponte* "order[ing] separate trials of counts."  Fed. R. Crim. P. 14(a).

As we stated earlier, there is no plain error here, and indeed we are not concluding that there was error at all in the district court's failure to *sua sponte* sever Browne's charges under Rule 8(a) or Rule 14.

## B.  Federal Rules of Evidence

Related to his severance argument, Browne attempts to demonstrate prejudice from the joinder by asserting that the introduction of the drug offense evidence before a jury also trying the kidnapping offense violated his rights under the Federal Rules of Evidence.  In part, Browne notes that, even though he did not put on a defense against the unlawful possession of marijuana with intent to distribute charge, the government was allowed to introduce the 78 pounds of

marijuana recovered from his apartment. He asserts that introducing that evidence violated Rule 403 because it was more prejudicial than probative, Fed. R. Evid. 403; violated Rule 404 because it was introduced only to show his propensity towards criminal behavior, Fed. R. Evid. 404; and violated Rules 401 and 402 because it was irrelevant to the kidnapping charge, Fed. R. Evid. 401–402.

In light of our holding that there was no plain error in the failure to sever, however, the drug evidence was clearly relevant and admissible to prove that Browne unlawfully possessed marijuana with intent to distribute. Browne's claim that he did not mount a defense to the marijuana charge does not change the calculus. He pleaded not guilty. The government was obligated to prove the charge beyond a reasonable doubt. The evidence introduced was relevant to that charge. There was no plain error in the joinder, and there was no plain error in the admission of the evidence. Rare indeed would the case be in which we would find plain error in a judge's failure to *sua sponte* exclude evidence. Certainly, it is possible that such a case occurs from time to time, but this is not it.

## C.  Jury Instruction 2.219

The joint proposed jury instructions included instruction 2.219, titled "Impeachment by Proof of a Pending Case, Probation, or Parole–Witness." J.A. 62–63. That instruction informs the jury that if a witness is "under investigation," it may consider that fact in assessing "whether the witness has a bias in favor of one of the parties that may affect his/her willingness to tell the truth." 1 Crim. Jury Instructions for D.C. Instruction 2.219 (Lexis ed. 2019). After reviewing the proposed jury instructions, the district court decided not to issue instruction 2.219 because it did not think that the

instruction applied to any witness. Neither party objected to the court's decision at that time. Browne first raised the issue post-trial in a motion for a new trial, but the district court denied that motion. On appeal, Browne argues again that the district court erred when it struck instruction 2.219.

Relevant to this issue, Flores is a native of El Salvador. He entered the United States on a visa in 2008 and stayed in the country after it expired. After he testified before the grand jury, Flores decided to participate in the U-Visa program, which allows a victim of a violent crime to obtain legal-resident status by cooperating in the prosecution of that crime. As part of the U-Visa program, a law enforcement agency must certify that the applicant is aiding an investigation of a crime, and the U.S. Customs and Immigration Service must conduct its own investigation to determine whether the applicant is eligible for a U Visa. *See generally* 8 C.F.R. § 214.14. At trial, Flores testified that he had begun but not yet completed his U-Visa application.

Rather than issuing instruction 2.219, the court instead issued standard jury instructions related to witness credibility and potential for bias. The court instructed the jury:

> You alone are the sole judges of the credibility of the witnesses. You alone determine whether to believe any witnesses and the extent to which a witness should be believed. . . .

> You may consider anything that in your judgment affects the credibility of any witness. For example, you may consider . . . whether the witness has any motive for not telling the truth . . . [and] whether the witness has any interest in the outcome of this case, or friendship or

hostility toward other people concerned with this case. . . .

You should consider whether any inconsistencies are the result of different individuals seeing, hearing or recollecting things differently or the result of actual forgetfulness or the result of innocent mistake or the result of intentional falsehood. . . .

If you believe that any witness has shown him or herself to be biased for or against either side in this trial, you may consider and determine whether such bias or prejudice has colored the testimony of this witness so as to affect the desire and capability of that witness to tell the truth.

S.A. 126–28.

When presented with a motion for a new trial, the court has broad discretion to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). As to the jury instructions, the general rule is that "[a]s long as a district judge's instructions are legally correct[,] . . . he is not required to give them in any particular language." *Miller v. Poretsky*, 595 F.2d 780, 788 (D.C. Cir. 1978). Further, "jury instructions are not considered erroneous if, when viewed as a whole, 'they fairly present the applicable legal principles and standards.'" *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 556 (D.C. Cir. 1993) (quoting *EEOC v. Atl. Cmty. Sch. Dist.*, 879 F.2d 434, 436 (8th Cir. 1989)). Again, because the omission of instruction 2.219 was not raised until after trial, we review for plain error.

At the core of Browne's complaint, he is concerned that the court did not appropriately focus the jury's attention on Flores's potential for bias. *See* Comment to 1 Crim. Jury Instructions for D.C. Instruction 2.219 (Lexis ed. 2019) (noting that instruction 2.219 is appropriate if "the circumstances indicate that bias may exist"). Browne does not assert that the district court issued instructions that misstated the elements of the charged crimes or misstated the appropriate legal standard to be applied, for example. Instead, the gist of his concern is that the issued instructions did not single out Flores's potential for bias resulting from his immigration status in the way that instruction 2.219 would. *See Miller*, 595 F.2d at 788. But, as stated previously, "[a]s long as . . . [the] instructions are legally correct[,] . . . [the judge] is not required to give them in any particular language." *Id.*

In this case, the issued instructions clearly focused the jury's attention on the issues of witness credibility, bias, and motive to falsify testimony. Moreover, Browne has failed to cite any authority that affirmatively supports his argument that instruction 2.219 covers U-Visa applicants in the first place. Nor have we found any case stating that instruction 2.219 applies to testimony from U-Visa applicants during our own review. Absent legal authority stating such, it is not clear that U-Visa applicants are even "under investigation" within the meaning of instruction 2.219. Accordingly, the court did not clearly or obviously err when it decided to strike the instruction. Therefore, Browne has failed to demonstrate that the district court committed plain error when it refused to exercise its discretion to grant a new trial based on the exclusion of instruction 2.219.

### D. Sentencing

During his sentencing hearing, Browne objected to the district court's finding by a preponderance of the evidence that Browne had a gun during the kidnapping, arguing that it violated the Sixth Amendment and due process because the jury acquitted him of all gun-related charges. Similarly, Browne argues that the judge's finding that the kidnapping was in furtherance of drug trafficking violates the Sixth Amendment and due process because this was uncharged and unlitigated conduct.

Browne concedes that circuit precedent allows the district court to base its sentence on acquitted or uncharged conduct if it finds by a preponderance of the evidence that the conduct occurred, *United States v. Kpodi*, 824 F.3d 122, 126 (D.C. Cir. 2016), but he argues that this precedent violates the Sixth Amendment and due process, *see* Appellant's Br. 43–44 (citing *United States v. Bell*, 808 F.3d 926, 929–30 (D.C. Cir. 2015) (Millett, J., concurring in the denial of rehearing en banc)); *see generally United States v. Norman*, 926 F.3d 804, 811 (D.C. Cir. 2019) (noting criticism of reliance on acquitted or uncharged conduct at sentencing), *cert. filed*, No. 19-6589 (Nov. 12, 2019); *id.* at 813–14 (Henderson, J., concurring) (defending soundness of precedent). Because Browne's argument is at odds with the current state of the law, we cannot conclude that the district court erred when it considered acquitted and uncharged conduct in imposing Browne's sentence.

Further, Browne argues that the finding that the kidnapping was in furtherance of drug trafficking was error because there was no evidence presented to support that finding. *See* Appellant's Br. 42 (quoting *United States v. Petlechkov*, 922 F.3d 762, 770 (6th Cir. 2019) ("No evidence

cannot be a preponderance of the evidence.")).  Browne never objected to this second finding before or at sentencing.  Thus, we review the court's decision to base the sentence on that issue for plain error.

Browne relies predominantly on *Kpodi* and *United States v. Smith*, 267 F.3d 1154 (D.C. Cir. 2001), to support this argument.  Pre-trial, the district court in *Kpodi* ruled evidence inadmissible under Federal Rule of Evidence 404(b)(2) because it held that the "evidence, standing alone, did not support the Government's inference that Kpodi fired a gun during the shootings or held a weapon while fleeing."  *Kpodi*, 824 F.3d at 127.  But at sentencing, the *Kpodi* court found that same evidence persuasive to support its "inference that Kpodi either fired a weapon, was holding a gun while fleeing or even participated in the . . . shooting." *Id.* at 128.  The district court then explicitly relied on that inference when determining the appropriate sentence. *Id.* at 127–28.  Because the district court "switched course" between the evidentiary ruling and sentencing, we held that the district court's reliance on that evidence at sentencing was clearly erroneous. *Id.* at 127.

In *Smith*, relying on uncharged conduct, the district court applied a three-level upward departure from the recommended sentence under the U.S. Sentencing Guidelines.  *Smith*, 267 F.3d at 1163.  We noted that the district court specifically found that "the defendant's commission of other crimes on persons or entities in the course of committing the offenses of conviction justified a departure." *Id.* (internal quotation marks omitted).  This court explained that "in order to satisfy due process such conduct must be proven by a[t] least a preponderance of the evidence." *Id.* at 1165.  We vacated the sentence because the district court sentenced the defendant "*exactly as if* he had actually been convicted of [the uncharged conduct]" and the government had failed to prove "under any standard of proof"

that the defendant could have been convicted of at least one of the uncharged crimes as it had failed to produce any evidence related to an element of that crime. *Id.* at 1165–66.

Unlike *Kpodi*, the court in this case never passed upon the admissibility of any evidence related to whether the kidnapping was in furtherance of drug trafficking. We are thus not faced with a situation in which the district court adopted conflicting views of the same evidence. Additionally, unlike *Smith*, we are not faced with a situation in which the district court relied on uncharged conduct to justify an upward departure from the Sentencing Guidelines. Instead, the district court found that the defendant's drug trafficking was one of many aggravating factors on the kidnapping conviction and then imposed a within-guidelines sentence. Further, the district court's inference that the kidnapping was in furtherance of Browne's drug trafficking was entirely reasonable given the evidence before it. Accordingly, we hold that the court did not clearly or obviously err when it relied on that inference at sentencing.

### E. Ineffective Assistance of Counsel

Finally, Browne asserts a variety of ineffective assistance of counsel claims for the first time on appeal. He argues that his attorneys were ineffective in trial preparation, witness examination, and failing to raise the issues now raised in this appeal, including improper joinder, failure to sever, and admissibility of evidence. Perhaps most significantly, he argues that his *Miranda* rights were violated because the police continued to question him after he requested an attorney.

To succeed on an ineffective assistance of counsel claim, Browne must first show that his counsels' performance was deficient, meaning that "counsel's representation fell below an objective standard of reasonableness." *Strickland v.*

*Washington*, 466 U.S. 668, 688 (1984).  Second, Browne "must show that the deficient performance prejudiced the defense," *id.* at 687, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

"When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose."  *Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *see also United States v. Rashad*, 331 F.3d 908, 909 (D.C. Cir. 2003) (noting it is likely, "when a defendant asserts his sixth amendment claim for the first time on direct appeal, that the relevant facts will not be part of the trial record").  Thus, "this court's 'general practice is to remand the claim for an evidentiary hearing' unless 'the trial record alone conclusively shows' that the defendant either is or is not entitled to relief."  *Rashad*, 331 F.3d at 909–10 (quoting *United States v. Fennell*, 53 F.3d 1296, 1303–04 (D.C. Cir. 1995)).  The critical inquiry at this stage is whether the record conclusively demonstrates that Browne could not establish an ineffective assistance of counsel claim if given the opportunity to do so on remand.  *See id.* at 912.

Browne argues that the police continued to question him after he requested an attorney, thereby violating his *Miranda* rights.  *See Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981).  He alleges that his statements in response to those questions led to the search warrant, rendering that warrant invalid and necessitating the suppression of any evidence obtained from a search pursuant to it.  Browne's other ineffective assistance of counsel claims relate to his attorneys' failures to challenge other deficiencies with the search warrant, argue the charges were improperly joined, request severance, advise about the

possibility of a blind plea on the marijuana charge, adequately prepare for trial, conduct sufficient witness examinations, seek evidentiary exclusions, advocate for proper jury instructions, and conduct a sufficient investigation into witness backgrounds.

Because Browne has raised a colorable claim of ineffective assistance of counsel, we remand to the district court to develop a record and assess those claims in the first instance.

### III.    Conclusion

For the foregoing reasons, we affirm the various challenged rulings of the district court, and, consistent with our usual practice, we remand the ineffective assistance of counsel claims to the district court.

*So ordered.*